UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Crim. No. 09-173-B-W |
| | ) | |
| JOHN P. O'NEILL | ) | |
| | ) | |
| Defendant. | ) | |

*EX PARTE* **ORDER ON MOTION**
**FOR ISSUANCE OF SUBPOENAS**

Defendant John P. O'Neill requests ex parte orders granting him leave to subpoena documents from three separate record keepers for "records which may be material for the defense in this matter." (Request for Issuance of Subpoena, Doc. Nos. 41, 42, & 43.) The motions are denied.

## BACKGROUND

The Indictment charges John P. O'Neill with violating 18 U.S.C. § 875(c), Transmitting Threatening Communications in Interstate Commerce. The Indictment alleges that O'Neill placed a telephone call from Illinois to Augusta, Maine, and during the call threatened to knock in the teeth of the recipient of the call, C.M., and to put a bullet in the head of another person, S.C. (Indictment Specific Allegation ¶ 1.) The affidavit in support of the original complaint charging the same offense provides greater detail. According to Christopher Peavey, a special agent with the Federal Bureau of Investigation, his investigation revealed that at approximately 9:55 a.m. on February 10, 2009, a male caller telephoned Charles Mahaleris, a Staff Assistant at Senator Collins's office, located in Augusta, Maine. During the telephone call the individual identified himself as John P. O'Neill of Arlington Heights, Illinois. O'Neill stated he was going to put a bullet in the Senator's head and that he was going to knock in the teeth of Mahaleris.

Later that same day agents from the Chicago field office of the FBI traveled to the address in Arlington Heights given by the caller and interviewed John P. O'Neill.  O'Neill initially denied making the call, but then admitted that he had called to express disappointment with the position Senator Collins had taken on a recent vote.  According to O'Neill he became frustrated by what he considered rude treatment by the staffer and did threaten to punch him.  He denied threatening to harm the Senator.

## DISCUSSION

O'Neill's attorney has filed three separate motions directed at record keepers in Senator Collins's Bangor, Augusta, and Portland offices.  Each ex parte motion, unaccompanied by a memorandum of law, makes the following representation:

> Discovery reveals that the alleged victim who fielded the telephone call from Mr. O'Neill acknowledged that "[a]s a result of the federal economic stimulus package, the office was inundated with hundreds of telephone calls per day . . . [and that he] could barely get any other work done, due to the sheer volume of the calls . . . [and that] [t]he tone of these calls ranged from 'not necessarily pleasant, but civil,' to 'hostile but non-specific.'"  [The identified record keeper] thus possesses records which may be material for the defense in this matter.

No further details are provided.  He does not indicate whether he regards the documents as having both exculpatory value and impeachment value.  Accompanying the motion, counsel attached three identical documents which were on court form AO 89, "Subpoena to Testify at a Hearing or Trial in a Criminal Case."  Each Subpoena states as follows:

> You must also bring with you the following documents, electronically stored information, or objects
>
> All internal records generated from telephone calls received from the public commenting upon the Senator's position on the Federal Economic Stimulus Package at the Augusta office of Senator Susan Collins between the dates of February 2, 2009, and February 13, 2009.  Such records should include any notes from such calls, any written or e-mail correspondence generated from such calls, any records of the volume of such calls, and any and all records which demonstrate either the volume or the content of any such calls.

> In lieu of appearance, such records may be provided by January 4, 2009, to the address provided below:
>
> (a copy of the proposed subpoena is attached)

Rule 17 of the Federal Rules of Criminal Procedure permits the Government or a defendant to subpoena documents from witnesses in preparation for trial. F. R. Crim. P. 17(c). It also affords the witness an opportunity to quash the subpoena "if compliance would be unreasonable or oppressive." F. R. Crim. P. 17(c)(2). The Rule is not a rule of general discovery. Rather, "its chief innovation was to expedite the trial by providing a time and place *before* trial for the inspection of the subpoenaed materials." United States v. Nixon, 418 U.S. 683, 698-99 (1974). The basic prerequisites for pretrial production of documents pursuant to a Rule 17 subpoena duces tecum in a criminal case have been described as follows:

> [I]n order to require production prior to trial, the moving party must show: (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."

Id. at 699-700 (footnote omitted). These four factors are often distilled into three: "(1) relevancy; (2) admissibility; and (3) specificity." Id. at 700. The movant is expected to articulate the materiality of the requested documents and to tailor his request so that it is specifically addressed to such documents. This requirement is designed to prevent overbroad requests amounting to general discovery initiatives. United States v. Shinderman, 232 F.R.D. 147, 150 (D. Me. 2005).

On balance, O'Brien's request has no appearance of validity because there is no indication it is calibrated to correspond with the evidence thus far produced by the Government

3

in connection with the specific telephone call that informs the substance of the indictment. The relevancy and admissibility of this "discovery" in terms of a suggested defense theory is nil. The only possible use I can see, based on the limited information available to me, would be to impeach Mahaleris's testimony regarding the frequency and tenor of other telephone calls received by him during the same time period. But such a use would mean that the subpoena would be directed at the calls he received in the Augusta office. In other words, the request strongly resembles either a wholesale "fishing expedition" or impeachment discovery. Using a Rule 17 subpoena for production of impeachment evidence in advance of trial is not in keeping with the purposes Rule 17 is meant to serve. See, e.g., United States v. Johnson, No. CR-94-48 SBA, 2007 U.S. Dist. Lexis 95834, *5, 2008 WL 62281, *2 (N.D. Cal. 2008); United States v. Giampa, No. 92-CR-437, 1992 U.S. Dist. Lexis 15214, *7-8, 1992 WL 296440, at *3 (S.D.N.Y. 1992). Additionally, even if I assume the admissibility and relevance of the specified records, it concerns me that I am being asked to make these determinations of relevance, admissibility, and specificity in an ex parte proceeding without input from the Government on those issues and with little showing as to why the request needs to be made in an ex parte fashion. See United States v. Fox, 275 F. Supp. 2d 1006, 1011 (D. Neb. 2003) (collecting cases addressed to ex parte requests under Rule 17 and the range of judicial approaches). In particular, it would seem that the request could be made by O'Neill in a way that did not disclose to the Government his trial strategy, but would give the Government the opportunity to present its position on issues related to reasonableness of the production of these documents. Although I am not averse to issuing a Rule 17 subpoena duces tecum on an ex parte basis when necessary, I am also not persuaded that an ex parte approach is needed here, even if defendant seeks leave to file a substantive memorandum under seal explaining relevancy and admissibility issues. A staff member of the

Senator's office is the Government's primary witness in this case. Were these subpoenas issued on an ex parte basis, I rather suspect that the Assistant United States Attorney handling the case would be aware of service of the subpoena within the hour.

## CONCLUSION

Defendant O'Brien's ex parte Motions for Issuance of Subpoena Duces Tecum (Doc. Nos. 41, 42, & 43) are DENIED, without prejudice to his right to renew the motion in the present form upon notice to the Government, allowing for the Government to file a responsive pleading. Alternatively, O'Brien could resubmit his motion on an ex parte sealed basis articulating the appropriate specificity, relevancy, and admissibility components. If I determined, ex parte, that it was appropriate to grant a properly supported motion, then the Government could be alerted to the imminent issuance of the subpoena and be allowed to be heard on reasonableness and undue burden issues in terms of the actual production of the documents.

## CERTIFICATE

Any objection to this Order shall be filed in accordance with F. R. Crim. P. 59(a).

*So Ordered.*
December 11, 2009                                       /s/ Margaret J. Kravchuk
                                                        U.S. Magistrate Judge