UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR-09-173-B-W |
| | ) | |
| JOHN P. O'NEILL | ) | |

**ORDER ON GOVERNMENT'S MOTION *IN LIMINE* TO PRECLUDE EVIDENCE REGARDING DEFENDANT'S SUBJECTIVE INTENT**

On October 21, 2009, a federal grand jury indicted John P. O'Neill for transmitting threatening communications in interstate commerce in violation of 18 U.S.C. § 875(c). *Indictment* (Docket # 17). The case is scheduled for jury selection on February 2, 2010. The Government moved *in limine* on December 22, 2009 to prevent Mr. O'Neill from presenting evidence of his subjective intent in transmitting the threats. *Gov't's Mot.* in Limine *To Preclude Evidence Regarding Def.'s Subjective Intent* (Docket # 47) (*Gov't's Mot.*). Mr. O'Neill did not respond.

**I.     STATEMENT OF FACTS**

The Government has proffered that the evidence in this case will reveal: on February 10, 2009, Mr. O'Neill placed a telephone call from his home in Illinois to the office of United States Senator Susan Collins in Augusta, Maine. *Id.* at 1. During the phone call, Mr. O'Neill, who was loud and boisterous, told a staffer that he was angry with the senator for her position on a recent vote, that she had sold out her Country, and that she was a disgrace who should not call herself a Republican. *Id.* He then twice stated that he was going to "put a bullet in her head" and he also stated that he was going to "come to Maine and kick [the staffer's] teeth in." *Id.* at 1-2. Upon request, he provided his true name and home address. *Id.* at 2.

Mr. O'Neill's threats were immediately reported to the United States Capitol Police, who in turn notified the Federal Bureau of Investigation (FBI).  *Id.*  Later that same day, FBI agents interviewed Mr. O'Neill at his home in Illinois, and, after initially denying that he had placed a telephone call to the senator's office, he eventually admitted he had done so.  *Id.*  He also admitted that he had threatened to punch the person with whom he spoke but repeatedly denied threatening the senator.  *Id.*  He said he did not intend to harm anyone and he was just venting his frustration over rude treatment by the staffer.  *Id.*

The Government is concerned that at trial Mr. O'Neill may "offer evidence regarding his lack of intent to threaten anyone or to carry out his threats."  *Id*.  The Government seeks to preclude the introduction of such evidence.

## II.     DISCUSSION

18 U.S.C. § 875(c) provides in part: "Whoever transmits in interstate . . . commerce any communication containing . . . any threat to injure the person of another, shall be fined under this title or imprisoned not more than five years, or both."  The crime contains three elements:

(1) That the communication was sent in interstate commerce;

(2) That the defendant intended to send, transmit or make the communication; and,

(3) That the communication contained a true threat to injure someone.

D. Brock Hornby, 2009 Revisions to Pattern Criminal Jury Instructions for the District Courts of the First Circuit § 4.18.875 (2009).  Judge Hornby's pattern instructions read:

> In determining whether a communication is a true threat you must use an objective standard.  A true threat is one that a reasonable recipient, familiar with the context of the communication, would find threatening and that [defendant] reasonably should have foreseen would be taken as a threat.  The government does not have to prove that [defendant] subjectively intended the recipient to understand the communication as a threat.  In determining whether a communication is a true threat, you should consider the factual context.  This may include the tone of the communication, the manner in which it was made, and the

>effect on [listeners].  It is not necessary that the statement be made face to face.  It is also not necessary to prove that [defendant] actually intended to carry out the threat.

*Id.*  In his Comment, Judge Hornby observes:

>This instruction is based on *United States v. Nishnianidze*, 342 F.3d 6 (1st Cir. 2003) and *United States v. Whiffen*, 121 F.3d 18 (1st Cir. 1997).  The definition of "true threat" goes back to *United States v. Fulmer*, 108 F.3d 1486 (1st Cir. 1997), a case arising under 18 U.S.C. § 115.  However, unlike *Fulmer*, a defendant charged under 18 U.S.C. § 875 need not "knowingly" threaten the recipient; the defendant need only intend to send the communication, and there is no requirement that the defendant subjectively intend the recipient to understand the communication as a threat.

*Id.*

Consistent with Judge Hornby's pattern instructions, First Circuit authority on this point is clear.  In *Fulmer*, the First Circuit concluded that "the appropriate standard under which a defendant may be convicted for making a threat is whether he should have reasonably foreseen that the statement he uttered would be taken as a threat by those to whom it is made." *Fulmer*, 108 F.3d at 1491 (interpreting § 875).  *Fulmer* observed that if the focus were on the recipient alone, "a defendant may be convicted for making an ambiguous statement that the recipient may find threatening because of events not within the knowledge of the defendant.  Therefore, we follow the approach of several circuits by holding that the appropriate focus is on what the defendant reasonably should have foreseen." *Id.* at 1491-92.

It is easy to accept the proposition that evidence of Mr. O'Neill's subjective intent is not relevant.  *See United States v. Voneida*, No. 07-0312, 2008 WL 189667, at *1 (M.D. Pa. Jan. 18, 2008) (granting an unopposed motion *in limine* to exclude evidence of the defendant's subjective intent).  As a more practical matter, however, the line between evidence that tends to prove subjective intent and evidence that tends to prove what the defendant reasonably should have foreseen is difficult to divine in advance of trial.  It is unlikely that, if Mr. O'Neill takes the

3

stand, he will tailor his testimony to make the distinction.  For example, is the testimony, "I was just venting and I did not think they would take me seriously," prohibited evidence of subjective intent or admissible evidence of reasonable foreseeability?  Without a trial context, the best the Court can do is to affirm that it will apply First Circuit law.  At the same time, the Court places counsel on notice that if evidence could be relevant to the question of reasonable foreseeability, the Court's inclination is to admit the evidence and instruct the jury as to its limited purpose.[1]

To address a final point, there has been some controversy as to whether under *Virginia v. Black*, 538 U.S. 343 (2003), specific intent to make a threat is required to remove the speech from First Amendment protection.  *Compare United States v. Cassel*, 408 F.3d 622, 631-32 (9th Cir. 2005), *with New York v. Cain*, 418 F. Supp. 2d 457 (S.D.N.Y. 2006), *and People v. Stanley*, 170 P.2d 782 (Colo. App. 2007) (listing cases).  The First Circuit has not addressed this issue directly, but, for this case, the short answer is found in *United States v. Hardy*, 640 F. Supp. 2d 75, 80-81 (D. Me. 2009).  In *Hardy*, the defendant was charged with threatening to kill the President.  Magistrate Judge Rich concluded that such "true threats" are not entitled to First Amendment protection: "From all that appears in this case, the defendant meant to communicate a serious expression of his intent to kill the president, an act of unlawful violence, at the time he made the statements.  Those statements, as reported, cannot reasonably be construed as 'political hyperbole.'"  *Id.* at 81.  Here, taking the Government's proffer as true, the threats to "put a bullet" in the head of a United States Senator and to kick in her staffer's teeth are "pure, unqualified threats" and do not enjoy the protection of the First Amendment.  *Id.*; *Black*, 538

---

[1] Federal Rule of Evidence 103(a), as amended in 2000, provides that "[o]nce the court makes a definitive ruling on the record admitting or excluding evidence, either at or before trial, a party need not renew an objection or offer of proof to preserve a claim of error for appeal."  To be clear, as there was no specific context set forth in the motion, the Court does not consider this Order to be definitive within the meaning of Rule 103(a), and the Government must make a timely objection at trial to any question that in its view elicits a response that in its view should be excluded.  *Compare United States v. Carpenter*, 494 F.3d 13, 18-19 (1st Cir. 2007); *United States v. Mahone*, 453 F.3d 68, 70 (1st Cir. 2006).

U.S. at 359 (stating that "the First Amendment . . . permits a State to ban a 'true threat'") (quoting *Watts v. United States*, 394 U.S. 705, 708 (1969); *R.A.V. v. City of St. Paul, Minn.*, 505 U.S. 377, 388 (1992).

### III.  CONCLUSION

The Court GRANTS the Government's Motion *in Limine* (Docket # 47).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 20th day of January, 2010